167 F.3d 191
 132 Ed. Law Rep. 288, 14 IER Cases 1386
 Melvin I. UROFSKY; Paul Smith; Brian J. Delaney; Dana
Heller; Bernard H. Levin; Terry L. Meyers,
Plaintiffs-Appellees,
v.
James S. GILMORE, III, in his official capacity as Governor
of the Commonwealth of Virginia, Defendant-Appellant.
American Association of University Professors; The Author's
Guild; The Thomas Jefferson Center for the
Protection of Free Expression, Amici Curiae.
 No. 98-1481.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 29, 1998.
Decided Feb. 10, 1999.
 
 ARGUED: William Henry Hurd, Senior to the Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellant. Marjorie Heins, American Civil Liberties Union Foundation, New York, New York, for Appellees. ON BRIEF: Mark L. Earley, Attorney General of Virginia, Peter R. Messitt, Senior Assistant Attorney General, Alison Paige Landry, Assistant Attorney General, Rita R. Woltz, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellant. Ann Beeson, American Civil Liberties Union Foundation, New York, New York; Louis M. Bograd, American Civil Liberties Union Foundation, Washington, D.C.; Michael H. Hammer, Todd G. Hartman, Willkie, Farr & Gallagher, Washington, D.C., for Appellees. Jonathan Alger, Donna Euben, American Association of University Professors, Washington, D.C.; J. Joshua Wheeler, Robert M. O'Neil, The Thomas Jefferson Center for the Protection of Free Expression, Charlottesville, Virginia; Edward M. McCoyd, The Authors Guild, New York, New York, for Amici Curiae.
 Before WILKINS, HAMILTON, and LUTTIG, Circuit Judges.
 Reversed by published opinion. Judge WILKINS wrote the majority opinion, in which Judge LUTTIG joined. Judge HAMILTON wrote a concurring opinion.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 Six professors employed by various public colleges and universities in Virginia brought this action[1] challenging the constitutionality of a Virginia law restricting state employees from accessing sexually explicit material on computers that are owned or leased by the state. See Va.Code Ann. § 2.1-804 to -806 (Michie Supp.1998) (the Act). The district court granted summary judgment in favor of Plaintiffs, holding that the Act unconstitutionally infringed on state employees' First Amendment rights. See Urofsky v. Allen, 995 F.Supp. 634 (E.D. Va.1998). We reverse.
 
 I.
 The central provision of the Act states:
 
 2
 Except to the extent required in conjunction with a bona fide, agency-approved research project or other agency-approved undertaking, no agency employee shall utilize agency-owned or agency-leased computer equipment to access, download, print or store any information infrastructure files or services having sexually explicit content. Such agency approvals shall be given in writing by agency heads, and any such approvals shall be available to the public under the provisions of the Virginia Freedom of Information Act.
 
 
 3
 Va.Code Ann. § 2.1-805.[2] Another section of the Act defines "sexually explicit content" to include:
 
 
 4
 (i) any description of or (ii) any picture, photograph, drawing, motion picture film, digital image or similar visual representation depicting sexual bestiality, a lewd exhibition of nudity, as nudity is defined in § 18.2-390, sexual excitement, sexual conduct or sadomasochistic abuse, as also defined in § 18.2-390, coprophilia, urophilia, or fetishism.
 
 Va.Code Ann. § 2.1-804.[3]
 
 5
 As its language makes plain, the Act prohibits state employees from accessing sexually explicit material on computers owned or leased by the Commonwealth. But, the Act does not prohibit all access by state employees to such materials, for a state agency head may give permission for a state employee to access such information on computers owned or leased by the Commonwealth if the agency head deems such access to be required in connection with a bona fide research project or other undertaking. Further, state employees remain free to access sexually explicit materials from their personal or other computers. Thus, the Act prohibits state employees from accessing sexually explicit materials only when the employees are using computers that are owned or leased by the Commonwealth and permission to access the material has not been given by the appropriate agency head.
 
 
 6
 Plaintiffs maintain that this restriction--the denial of access to sexually explicit materials on computers owned by or leased to the Commonwealth when permission for such access has not been given by the appropriate department head--is violative of their First Amendment right to freedom of expression. Plaintiffs do not assert that they possess a First Amendment right to access this information on state-owned or leased computers for their personal use; rather, Plaintiffs confine their challenge to the denial of access to sexually explicit material for work-related purposes.[4]
 
 II.
 
 7
 It is well settled that citizens do not relinquish all of their First Amendment rights by virtue of accepting public employment. See United States v. National Treasury Employees Union, 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964, 465 (1995); Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Pickering v. Board of Educ., 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Nevertheless, the state, as an employer, undoubtedly possesses greater authority to restrict the speech of its employees than it has as sovereign to restrict the speech of the citizenry as a whole. See Waters v. Churchill, 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686, 671 (1994) (plurality) (recognizing "that the government as employer ... has far broader powers than does the government as sovereign"); Pickering, 391 U.S. at 568, 88 S.Ct. 1731(explaining "that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general"). A determination of whether a restriction imposed on a public employee's speech is violative of the First Amendment requires " 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " Connick, 461 U.S. at 142, 103 S.Ct. 1684 (alteration in original) (quoting Pickering, 391 U.S. at 568). This balancing involves an inquiry first into whether the speech at issue touches upon a matter of public concern, and, if so, whether the employee's interest in First Amendment expression outweighs the public employer's interest in what the employer has determined to be the appropriate operation of the workplace. See Pickering, 391 U.S. at 568, 88 S.Ct. 1731; see also Connick, 461 U.S. at 146, 103 S.Ct. 1684 (noting that if a public employee's speech cannot be characterized "as relating to any matter of political, social, or other concern to the community," the constitutional inquiry comes to an end).
 
 
 8
 Thus, our threshold inquiry is whether the Act regulates speech[5] by employees of the Commonwealth in their capacity as citizens upon matters of public concern. See Connick, 461 U.S. at 146, 103 S.Ct. 1684[6] If a public employee's speech does not touch upon a matter of public concern, the Commonwealth, as employer, may regulate it without infringing any First Amendment protection. See Holland v. Rimmer, 25 F.3d 1251, 1255 n. 11 (4th Cir.1994).[7] Whether speech touches upon a matter of public concern is a question of law for the court and, accordingly, we review the matter de novo. See Connick, 461 U.S. at 147-48 & n. 7, 103 S.Ct. 1684; Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 192 (4th Cir.1994); Holland, 25 F.3d at 1255.
 
 
 9
 Speech involves a matter of public concern when it affects a social, political, or other interest of a community. See Connick, 461 U.S. at 146, 103 S.Ct. 1684. And, to determine whether speech involves a matter of public concern, we examine the content, context, and form of the speech at issue in light of the entire record. See id. at 147-48, 103 S.Ct. 1684. An inquiry into whether a matter is of public concern does not involve a determination of how interesting or important the subject of an employee's speech is. See Terrell v. University of Tex. Sys. Police, 792 F.2d 1360, 1362 (5th Cir.1986). Further, the place where the speech occurs is irrelevant: An employee may speak as a citizen on a matter of public concern at the workplace, and an employee may speak in his capacity as an employee away from the workplace. Compare Rankin v. McPherson, 483 U.S. 378, 388-92, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (holding public employee's discharge was violative of First Amendment when based on comment by employee on a matter of public concern made at work), with DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir.1995) (recognizing that speech by a public employee outside the workplace was made in the employee's official capacity). Critical to a determination of whether speech touches upon a matter of public concern is whether the speech is "made primarily in the [employee's] role as citizen or primarily in his role as employee." Terrell, 792 F.2d at 1362; see Boring v. Buncombe County Bd. of Educ., 136 F.3d 364, 368-69 (4th Cir.) (en banc) (holding that the discharge of a high school drama teacher as a result of her selection of a high school play was not violative of the First Amendment because the choice of the play did not involve a matter of public concern since the choice was made by the teacher in her capacity as a teacher in a matter dealing with curriculum), cert. denied, 119 S.Ct. 47 (1998); DiMeglio, 45 F.3d at 805 (noting that "the Court ha[s] distinguished between speaking as a citizen and as an employee, and ha[s] focused on speech as a citizen as that for which constitutional protection is afforded"); cf. Rust v. Sullivan, 500 U.S. 173, 198-99, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (rejecting argument that the First Amendment rights of the staff of clinics accepting federal funding were violated by regulations prohibiting abortion counseling by clinics receiving federal funds, stating that "[t]he employees' freedom of expression is limited during the time that they actually work for the project[,] but this limitation is a consequence of their decision to accept employment in a project, the scope of which is permissibly restricted by the funding authority").
 
 
 10
 The challenged aspect of the Act does not regulate the speech of the citizenry in general, but rather the speech of state employees in their capacity as employees. It cannot be doubted that in order to pursue its legitimate goals effectively, the Commonwealth must retain the ability to control the manner in which its employees discharge their duties and to direct its employees to undertake the responsibilities of their positions in a specified way. Cf. Waters, 511 U.S. at 675, 114 S.Ct. 1878 (plurality) (explaining that restrictions on speech may be necessary when "the government is employing someone for the very purpose of effectively achieving its goals"); id. at 672, 114 S.Ct. 1878(noting that "even many of the most fundamental maxims of ... First Amendment jurisprudence cannot reasonably be applied to speech by government employees"); Connick, 461 U.S. at 143, 103 S.Ct. 1684 (acknowledging that "government offices could not function if every employment decision became a constitutional matter"). The essence of Plaintiffs' claim is that they are entitled to access sexually explicit material in their capacity as state employees. Because Plaintiffs assert only an infringement on the manner in which they perform their work as state employees, they cannot demonstrate that the speech to which they claim entitlement would be made in their capacity as citizens speaking on matters of public concern.[8]
 
 III.
 
 11
 We reject the conclusion of the district court that Va.Code Ann. §§ 2.1-804 to -806, restricting state employees from accessing sexually explicit material on computers that are owned or leased by the Commonwealth unless given permission to do so, infringes upon the First Amendment rights of state employees. The Act regulates the speech of individuals speaking in their capacity as Commonwealth employees, not as citizens, and thus the Act does not touch upon a matter of public concern. Consequently, the speech may be restricted consistent with the First Amendment.
 
 
 12
 REVERSED.
 
 HAMILTON, Circuit Judge, concurring:
 
 13
 The Plaintiffs claim that they have a First Amendment right to access and disseminate sexually explicit materials on computers that are owned and operated by the Commonwealth. The Plaintiffs' access to, and dissemination of, sexually explicit materials is necessary for them to perform their duties as educators; but, nevertheless, the Plaintiffs' access to, and dissemination of, sexually explicit materials is accomplished in their capacities as state employees. Because the Plaintiffs' access to, and dissemination of, sexually explicit materials is accomplished in their capacities as state employees, the court today correctly concludes that the speech in this case, under the implicit holding of our en banc decision in Boring v. Buncombe County Bd. of Educ., 136 F.3d 364 (4th Cir.) (en banc ), cert. denied, 119 S.Ct. 47 (1998), is employee speech, and, therefore, not entitled to First Amendment protection.
 
 
 14
 I joined Judge Motz's dissent in Boring which persuasively explains why a public employee should enjoy far greater First Amendment protection than that contemplated by Boring. See id. at 378-80. Left to my own devices, I would hold that the Plaintiffs' speech in this case is entitled to some measure of First Amendment protection, thus triggering application of the Connick /Pickering balancing test. However, being bound by the en banc court's decision in Boring, I concur in the court's opinion.
 
 
 15
 Finally, I write separately to make clear that we leave unanswered the question of whether a governmental employee who seeks to access and disseminate sexually explicit materials rising to the level of matters of public concern, not in his or her role as a governmental employee, but rather as a private citizen, is entitled to some measure of First Amendment protection. The facts of this case leave that issue for another day.
 
 
 
 [1]
 The professors named George Allen, then Governor of Virginia, as defendant. Subsequently, James S. Gilmore, III was elected Governor and was substituted as a party. For ease of reference, we refer to Gilmore as "the Commonwealth."
 
 
 [2]
 Other provisions of the Act provide additional relevant definitions:
 "Agency" means any agency, authority, board, department, division, commission, institution, institution of higher education, bureau, or like governmental entity of the Commonwealth, except the Department of State Police.
 "Information infrastructure" means telecommunications, cable, and computer networks and includes the Internet, the World Wide Web, Usenet, bulletin board systems, online systems, and telephone networks.
 Va.Code Ann. § 2.1-804 (emphasis omitted).
 
 
 [3]
 Section 18.2-390 provides in pertinent part:
 (2) "Nudity" means a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered or uncovered male genitals in a discernibly turgid state.
 (3) "Sexual conduct" means actual or explicitly simulated acts of masturbation, homosexuality, sexual intercourse, or physical contact in an act of apparent sexual stimulation or gratification with a persons clothed or unclothed genitals, pubic area, buttocks or, if such be female, breast.
 (4) "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal.
 (5) "Sadomasochistic abuse" means actual or explicitly simulated flagellation or torture by or upon a person who is nude or clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.
 Va.Code Ann. § 18.2-390(2)-(5) (Michie 1996) (emphasis omitted).
 
 
 [4]
 Plaintiffs asserted that the Act violated their First Amendment rights to free speech by hindering their ability to perform their employment duties, e.g., teaching and researching. The lead plaintiff, Melvin I. Urofsky, alleged that he had declined to assign an online research project on indecency law because he feared he would be unable to verify his students' work without violating the Act. Another plaintiff, Terry L. Meyers, contended that he is affected by the Act because his ability to access Virginia's database to research sexually explicit poetry in connection with his study of Victorian poets is restricted by the policy. Plaintiff Paul Smith's website has been censored as a result of the Act. And, plaintiffs Dana Heller, Bernard H. Levin, and Brian J. Delaney maintained that they were hesitant to continue their Internet research of various aspects of human sexuality
 
 
 [5]
 There is no dispute concerning whether "speech" is at issue here. First Amendment protection of expression encompasses the right to access information. See Kleindienst v. Mandel, 408 U.S. 753, 762-63, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972); Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969)
 
 
 [6]
 The Commonwealth initially maintains that the speech regulated by the Act is not entitled to First Amendment protection because the Act regulates only obscene material. See Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, 23 (1973) (holding that obscene material is not entitled to First Amendment protection). We disagree. Although the definition of "sexually explicit content" in the Act includes some obscene speech, i.e., speech that "lacks serious literary, artistic, political, or scientific value;" that is "patently offensive;" and that appeals primarily to a "prurient interest," id. at 24, 93 S.Ct. 2607, the Act regulates additional speech as well. For example, the Act is sufficiently broad to govern research and debate on sexual themes in art, literature, history, and the law; speech and research by medical and mental health professionals concerning sexual disease, sexual dysfunction, and sexually related mental disorders; and the routine exchange of information among social workers on sexual assault and child abuse. Accordingly, the Act regulates more than obscene speech
 
 
 [7]
 When a public employee's speech does not touch upon a matter of public concern, that speech is not "totally beyond the protection of the First Amendment," but "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a [restriction on a public employee's speech] taken by a public agency." Connick, 461 U.S. at 147, 103 S.Ct. 1684
 
 
 [8]
 Our conclusion that the Act does not infringe on protected speech is dispositive of Plaintiffs' claim that the Act is overbroad. See Boos v. Barry, 485 U.S. 312, 331, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (recognizing that a regulation that "does not reach a substantial amount of constitutionally protected" speech is not overbroad). Further, Plaintiffs' claim that the Act violates their First Amendment right to academic freedom is foreclosed by our en banc decision in Boring. See Boring, 136 F.3d at 368-69. Finally, the Act is not unconstitutionally vague because it gives a "person of ordinary intelligence a reasonable opportunity to know what is prohibited." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)