Stephen R. MERRITT, Plaintiff,

v.

J. Michael MULLEN, Defendant.

No. Civ.A. 3:98CV590.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 18, 1999.

Walter Howard Ryland, Williams, Mullen, Christian & Dobbins, Richmond, VA, for Stephen R. Merritt, plaintiff.

Alison Paige Landry, William Eugene Thro, Office of the Attorney General, Richmond, VA, Ashley Lionel Taylor, Jr., Office of the Attorney General, Richmond,

VA, Ronald C. Forehand, Senior Assistant Attorney, for J. Michael Mullen, defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on Defendant J. Michael Mullen's Motion for Summary Judgment. For the following reasons, the Court hereby GRANTS the motion.

## I. Background

The following facts are taken from the First Amended Complaint. Plaintiff Stephen R. Merritt was employed as a Student Financial Aid Program Coordinator by the State Council of Higher Education for Virginia (SCHEV), an agency of the Commonwealth of the Virginia. At the time of Plaintiff's employment, Defendant was Acting Director of SCHEV.[1]

Plaintiff had been employed at SCHEV since 1986 and had been the manager of the Financial Aid Section since 1990. He was employed under a contract which by its terms expired on June 30, 1998. The contract required that notice of termination be given by March 30, 1998. On March 15, 1998, the Defendant wrote a letter to Plaintiff in which he stated that Merritt's contract was not going to be renewed. In a second letter, written April 18, 1998, Defendant classified the termination as the result of a reorganization.[2]

Plaintiff posits that the real reason he was terminated had nothing to do with his alleged mismanagement of TAG and VGAP. During the spring of 1997, both Plaintiff and Defendant were competing for the position of Deputy Director. Defendant was named Acting Director on July 1, 1997. After the official application progress began, Plaintiff alleges that Defendant began to take ever-greater degrees of control over SCHEV. According to Plaintiff, Defendant did not want any situation to arise that would jeopardize his chances for the position. Therefore, after Plaintiff openly criticized Defendant on a number of issues, Defendant decided not to renew his appointment.[3]

Plaintiff filed his Motion for Judgment in the Circuit Court for the City of Richmond. On September 16, 1998, Defendant removed the case to this Court. An Amended Motion for Judgment was filed on January 22, 1999. This Motion for Summary Judgment was brought by the Defendant on February 3, 1999.

## II. Standard of Review

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the nonmoving party is entitled to judgment as a matter of law. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985); Fed.R.Civ.P. 56(c). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr. Extension Serv.*, 815 F.2d 1001, 1004 (4th Cir.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to determine whether a triable issue exists.

1. Although Defendant was not Plaintiff's immediate supervisor, he did have the authority to decline to renew Plaintiff's employment contract.

2. Personnel forms state that Merritt involuntary retired. Plaintiff contends that Defendant has stated in pretrial proceedings that the real reason for this action was that the Plaintiff mismanaged Tuition Assistance Grant Program (TAG) and the Virginia Guaranteed Assistance Program (VGAP).

3. Defendant, in his motion for summary judgment, does not dispute Plaintiff's version of the facts. Specifically, that Plaintiff's speech played a substantial role in his non-renewal and that there were no alternative grounds for the non-renewal of his employment contract. (Def.'s Mem.Supp. at 3.) Thus, no genuine issue of material fact exists, for the purposes of this motion, as to the reason for Plaintiff's termination.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e).... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes.

*Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

### III. Argument

### 1. Plaintiff Fails to State a Due Process Claim

Plaintiff alleges that the Defendant's actions deprived him of a liberty interest under the Due Process Clause of the Fourteenth Amendment. Specifically, in his brief, Plaintiff argues that his liberty interest to pursue a career in his chosen field was interfered with by Defendant's false claims of incompetence that were communicated to persons outside of SCHEV.[4] However, the Court notes that Plaintiff, during the hearing, changed his argument and alleged that the liberty interest he was deprived of occurred when Defendant told the Plaintiff he was not terminating him "for cause" and then proceeded to discuss his mismanagement of SCHEV programs behind closed doors. As this claim was not presented in the Plaintiff's Amended Complaint, the Court does not address it now.

Both the Supreme Court and the Fourth Circuit have consistently held that public employees' liberty interests are not implicated by harm to reputation alone. *Paul v. Davis,* 424 U.S. 693, 706, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Zepp v. Rehrmann,* 79 F.3d 381, 388 (4th Cir.1996). "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Zepp,* at 388 (quoting *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). "To implicate a constitutionally protected liberty interest, defamatory statements must at least 'imply the existence of serious character defects such as dishonesty or immorality, ... that might seriously damage [the plaintiff's] standing and associations in his community,' or 'foreclose[ ] his freedom to take advantage of other employment opportunities.'" *Id.* (citations omitted). Accusations of incompetence or unsatisfactory job performance alone do not violate any clearly established federal right. *Id.*

■ Under the above cited law, it is evident that Defendant's accusations of mismanagement do not violate any clearly established federal right.[5] There is no evidence to show that statements were made by the Defendant which called into doubt the Plaintiff's moral character.[6] In addition, there has been no indication that Plaintiff's standing and associations in the community have suffered. Even assuming

4. Plaintiff recognizes that at-will employment is not a protectable property interest under the due process clause, *Bishop v. Wood,* 426 U.S. 341, 345–47, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and thus, does not attempt to proceed on this ground.

5. "[P]rivate communications of the reasons for an employee's discharge 'cannot properly form the basis for a claim that (a plaintiff's) interest in his 'good name, reputation, honor, or integrity' was thereby impaired.'" *Robert-*

*son v. Rogers,* 679 F.2d 1090, 1091–92 (4th Cir.1982) (quoting *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

6. All that the Plaintiff alleges is that his "good name, reputation, honor and integrity were impugned by the false statements of the defendant that he had mismanaged the TAG Program and the V–GAP Program...." (Pl.'s Resp. at 5.)

that Defendant told prospective employers that Plaintiff was terminated for incompetence and mismanagement, the court has held that even this does not give rise to a protected liberty interest.[7] *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982). As such, the Court finds that Plaintiff has failed to state a due process claim.

## 2. Plaintiff's Speech is not Protected by the First Amendment

■■■■ When a public employee claims to have suffered discrimination due to his or her exercise of rights guaranteed by the First Amendment to the Constitution, a court reviewing the claim must pursue a two-step analysis.[8] *Piver v. Pender County Bd. of Educ.*, 835 F.2d 1076, 1078 (4th Cir.1987). The first step is to inquire whether, as *matter of law*, the speech was constitutionally protected. Speech is constitutionally protected only if it relates to matters of public concern.[9] *See Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If the speech relates to a matter of public concern, the next step is to determine if the interests of the speaker and the community in the speech outweigh the interests of the employer in maintaining an efficient workplace. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).[10] Speech that cannot "be fairly

considered as relating to any matter of political, social, or other concern to the community, or that concerns matters bounded by [one's] immediate self-interest, is not protected by the first amendment." *Piver*, at 1078–79 (citations omitted).

The *Connick* Court established that the test for the existence of speech on matters of public concern involves inquiry into the "content, form and context of a given statement, as revealed by the whole record."[11] *Connick*, at 147–48, 103 S.Ct. 1684. Since then, the Fourth Circuit has elaborated on *Connick*'s "public concern" test:

> *Pickering*, its antecedents, and its progeny—particularly *Connick*—make it plain that the "public concern" or "community interest" inquiry is better designed—and more concerned—to identify a narrow spectrum of employee speech that is not entitled even to qualified protection than it is to set outer limits on all that it is. The principle that emerges is that all public employee speech that by content is within the general protection of the first amendment is entitled to at least qualified protection against public employer chilling action except that which, realistically viewed, is of purely "personal concern" to the employee—most typically, a pri-

7. "Allegations of incompetence do not imply the existence of serious character defects such as dishonesty or immorality, ... and are not the sort of accusations that require a hearing." *Robertson*, at 1092.

8. The outcome of this test is a question of law for the court and not for the jury. *Joyner v. Lancaster*, 815 F.2d 20, 23 (4th Cir.1987).

9. Critical to a determination of whether speech touches upon a matter of public concern is whether the speech is made "primarily in the [employee's] role as a citizen or primarily in his role as employee." *Urofsky v. Gilmore*, 167 F.3d 191, 1999 WL 61952, *3 (4th Cir.1999).

10. A public employer may avoid liability if it can establish that the employment action would have been made in any event for rea-

sons unrelated to the exercise of any First Amendment rights. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Defendant in this case does not dispute, for the purposes of this motion, that Plaintiff's termination was related to his speech.

11. The court stated that this is critical to the inquiry because "while speech that 'touche[s] upon matters of public concern in a most limited sense ... does not require a [public employer to] tolerate action which he reasonably believe[s] would disrupt his authority, and destroy close working relationships,' speech concededly disruptive may nevertheless be protected because it directly touches upon matters of public concern." *Orga v. Williams*, 996 F.2d 1211, 1993 WL 225269, *2, fn. 4 (4th Cir.1993) (unpublished) (citations omitted).

vate personal grievance ... The focus is therefore upon whether the "public" or the "community" is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a "private" matter between employer and employee.

*Berger v. Battaglia,* 779 F.2d 992, 998–99 (4th Cir.1985). "In excluding 'private personnel grievances,' the court in *Berger* screened out cases in which the aggrieved employee himself has spoken out about his own employment situation when that employment situation holds little or no interest for the public at large." *Piver,* at 1080. The burden is on the employee to demonstrate that the speech involves a matter of public concern. *Connick,* at 150, 103 S.Ct. 1684.

 The speech in question revolves around two separate set of circumstances. The first incident came about when Plaintiff urged the Chair of the SCHEV Board, Elizabeth McClanahan, to advocate a supporting role for SCHEV in assisting the colleges in collecting debts to the State owed by recipients of financial aid. (Pl.'s Resp. at 3.) According to Plaintiff, Defendant wanted no public discussion of this issue in order to avoid any public questioning of whether SCHEV was being too passive in collecting over $16 million in debts owed to the States. The next situation concerns an investigation of a complaint of racial discrimination at SCHEV. Plaintiff had previously publicly criticized Defendant in the Fall of 1997 for personnel decisions based on race. (*Id.*) These criticisms were allegedly expressed by Plaintiff to SCHEV employees outside the scope of his duties. He was later advised by the Defendant that he would be terminated immediately if he became involved in the race issue. Plaintiff also expressed concern to his immediate supervisor, Bob Belle, that Defendant was showing Mr. Belle disrespect due to his race.

Plaintiff has failed to meet his burden of proof on his showing of public concern.

Expressing disagreement with policy choices and with the operations of SCHEV staff is not speech that touches upon a matter of public concern and thus, is not constitutionally protected. In addition, this speech was made primarily by the Plaintiff in his role as a public employee. The courts have stated that this is critical to a determination that the speech is not of public concern. Since it is clear that Plaintiff's speech does not pass the first prong of the analysis, there is no need to balance the public's interest in the speech with the government's interest in an efficient workplace.

### 3. The Doctrine of Qualified Immunity

 Qualified immunity protects government officials from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Robinson v. Balog,* 160 F.3d 183, 187 (4th Cir.1998) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Officials lose the protection of the immunity only if it appears that (1) they violated a statutory and constitutional right of the plaintiff, and (2) the right was 'clearly established' at the time of the acts complained of such that an objectively reasonable official in their position would have known of the right." *McVey v. Stacy,* 157 F.3d 271, 276 (4th Cir.1998).

Since the Court has found that Plaintiff's speech was not constitutionally protected, there is no need to address whether Defendant is entitled to qualified immunity.

### IV. Conclusion

The Defendant's motion for summary judgment is GRANTED. Plaintiff has failed to state a due process claim, as there is no protected liberty interest violated by claims of mismanagement. His speech was not of public concern and thus, not protected by the First Amendment. Finally, since Plaintiff's speech was not consti-

tutionally protected, the Court does not need to reach the issue of qualified immunity.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

And it is SO ORDERED.