Thomas J. HOLLAND, Jr.,
Plaintiff–Appellant,

v.

Edith RIMMER; Alpha Scott; Edith El-
swick; Raymond Cole; Arvil Ratliff;
William P. Harris; Earl Scott; Carol
Brunty; Commonwealth of Virginia;
and County of Buchanan, Virginia, De-
fendants–Appellees.

No. 93–1447.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 25, 1993.

Decided June 13, 1994.

**ARGUED:** John Lumley Bagwell, John L. Bagwell, P.C., Grundy, VA, for appellant. Kurt Joseph Pomrenke, White, Elliott & Bundy, Bristol, VA, for appellees. **ON BRIEF:** Steven R. Minor, White, Elliott & Bundy, Bristol, VA, for appellees.

Before RUSSELL and WILKINS, Circuit Judges, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed and remanded in part by published opinion. Judge REBECCA BEACH SMITH wrote the opinion, in which Judge DONALD RUSSELL and Judge WILKINS joined.

## OPINION

REBECCA BEACH SMITH, District Judge:

Thomas J. Holland, Jr. ("Holland") brought this action, pursuant to 42 U.S.C. § 1983, against his former employer, the Buchanan County Department of Social Services; members of the Buchanan County Board of Social Services and the Board of Supervisors, in both their individual and official capacities ("the Board"); the Commonwealth of Virginia;[1] and the County of Buchanan. Holland's suit arises out of the termination of his employment by the Board. He appeals an order of the district court granting summary judgment in favor of the Board and the County of Buchanan. The district court relied on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986), in ruling that Holland received due process when the Board terminated his employment. Further, the district court held that Holland failed to present a factual basis for any First Amendment claim. For the reasons stated below, we affirm the decision of the district court, but remand for a determination of whether the district court will exercise pendent jurisdiction over Holland's remaining state law claims.[2]

## I.

On August 28, 1990, the Board of the Department of Social Services of Buchanan County voted to fire Thomas J. Holland, Jr. from his position as Director of Social Services of Buchanan County, Virginia. No reasons were given for his discharge. Holland filed a grievance, and on September 14, 1990, the Board sent him a letter, stating its reasons for his discharge and enclosing an unsatisfactory employee evaluation. In the same letter, the Board gave Holland five days to respond to its reasons for the discharge. Holland chose not to respond. By letter dated September 24, 1990, the Board reinstated Holland and fully compensated him for the period from August 28, 1990 to September 24, 1990, due to its initial failure to provide him with an explanation for his first termination. On the same date, however, the Board again fired Holland, providing him with four reasons for his dismissal,[3] and

---

1. Early in the district court proceedings, the Commonwealth of Virginia and Carol Brunty, an employee of Virginia's Department of Social Services, were voluntarily dismissed from the action by stipulation made pursuant to Federal Rule of Civil Procedure 41(a)(1).

2. On appeal the parties briefed and argued the issues of qualified immunity for the individual defendants, sovereign immunity under this court's decision in *Bockes v. Fields*, 999 F.2d 788 (4th Cir.1993), for the institutional defendants, and municipal liability. However, because we hold that Holland suffered no constitutional deprivation, we find it unnecessary to reach these issues.

3. The four reasons, written and attached to the September 24, 1990 letter, were:

Failure to follow a supervisor's instructions in that you failed to include the Board in the exit report meeting with the auditors.

Falsified a record in that you filed a written report with the Virginia Department of Social Services in response to the draft audit stating therein with regard to numerous items that the same were being reviewed by the County Attorney who would respond within 90 days.

Unsatisfactory job performance in that the draft audit revealed inadequate internal controls and a general disregard for the rules and regulations governing the agency and the effect on the agency's budget and reimbursement by the state or lack thereof in the event of unauthorized or improperly documented expenditures.

Unauthorized use of the agency's credit card.

gave him a reasonable time to respond to its action. Holland again filed a grievance, requesting a hearing.

A grievance panel hearing was conducted on June 25, 26, and 27, 1991, and a final panel decision was duly entered on August 28, 1991. The grievance panel found that the Board of Social Services did not comply with procedural requirements of the personnel manual when it fired Holland on August 28, 1990,[4] and that Holland was not guilty of committing a Group I or Group II offense.[5] However, the grievance panel apparently did find Holland guilty of a Group III offense, namely falsifying a record, which was one of the four reasons given for Holland's discharge on September 24, 1990.[6] Because it found that the Board later ratified the acts for which it discharged Holland, the panel reinstated him effective July 15, 1991.[7] Finally, the panel specifically denied Holland

back pay "due to the mitigating circumstances." J.A. at 47.

Holland filed this action, pursuant to 42 U.S.C. § 1983, seeking lost wages, attorney's fees, fringe benefits, damages for mental anguish and pain and suffering, and punitive damages. Holland alleged that the Board's decision to terminate his employment deprived him of a property right without due process of law, in violation of the First and Fourteenth Amendments to the United States Constitution.[8] Holland asserted that the Board's failure to provide him with a hearing prior to his termination violated his Fourteenth Amendment due process rights. Additionally, he claimed that the Board fired him in retaliation for disciplining family members and political "cronies" of Board members, in violation of his First Amendment rights.

The district court granted appellees' motion for summary judgment, holding that un-

J.A. at 75.

4. The Director of Social Services serves at the pleasure of the Board, subject to the provisions of the merit system plan as defined in section 63.1–87 of the Virginia Code. Va.Code Ann. § 63.1–62 (Michie 1991). The merit system plan is "those rules and regulations promulgated by the State Board in the development and operation of a system of personnel administration." Va.Code Ann. § 63.1–87. According to the rules and regulations so promulgated, an employee must receive 15 days prior notice of the specific reasons for dismissal, must be given a reasonable opportunity to respond, and must be notified of his right to grieve the action. Moreover, the basis for the dismissal must be documented and supported by past performance evaluations and application of the standards of conduct as set out in the personnel manual. However, a permanent employee may be terminated *immediately* if the reason for the dismissal is such that, in the discretion of the appointing authority, it is in the best interest of the agency. In that event, the employee must promptly be notified in writing and be advised of his right to file a grievance. Va. Dept. of Social Servs. Personnel Manual, Vol. IA, Ch. C & D. Appellees admit, and the grievance panel found, that the Board did not comply with these procedures as to the August 28, 1990 firing.

5. First Group Offenses are the least severe and include unsatisfactory attendance or excessive tardiness, abuse of agency time, obscene or abusive language, conviction of a moving traffic violation while using public-use vehicles, and inadequate or unsatisfactory job performance. Va.

Dept. of Social Servs. Personnel Manual, Vol. IA, Ch. D, at 47–48. Second Group Offenses are more severe and warrant a written warning or removal, if combined with three first group offenses. Second Group Offenses include failure to follow a supervisor's instructions, reporting to work under the influence of alcohol or drugs, leaving work without permission during working hours, failure to report to work without proper notice to a supervisor, unauthorized use of local or state property, and violation of safety rules where there is no threat to life. *Id.* at 48–49.

6. Falsifying a record is considered a Group III Offense. Va. Dept. of Social Servs. Personnel Manual, Vol. IA, Ch. D, at 50. Third Group Offenses include various types of conduct, ranging from acts of physical violence to willful destruction of state property, and are so serious that a first occurrence normally warrants removal. *Id.* at 50–51. Of the four reasons given to Holland for his termination, the first and fourth were Second Group Offenses, the third was a First Group Offense, and the second was a Third Group Offense. *See id.* at 47–51; *supra* note 3.

7. It is not clear from the record why the reinstatement date was July 15, 1991; apparently the Board's ratification took place on that date.

8. Although couched in terms of a violation of due process, Counts 3, 4, and 5 also alleged the torts of defamation and intentional infliction of emotional distress. In ruling on the motion for summary judgment, the district court addressed only Holland's First Amendment and due process claims and did not reach the state tort law issues.

der *Parratt*, 451 U.S. 527, 101 S.Ct. 1908, Holland "received the due process to which he was entitled" and that a federal court must give preclusive effect to findings of state administrative agencies. *Layne v. Campbell County Dep't of Social Servs.*, 939 F.2d 217 (4th Cir.1991). Thus, the district court held that it was precluded from making any further factual findings, reviewing the panel's decision, or awarding any further damages. Further, the district court held that Holland's First Amendment claim lacked factual support.

This court reviews the entry of summary judgment *de novo*, applying the same standard applicable to the district court. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992).

## II.

The district court granted summary judgment on Count 2 of Holland's complaint (the First Amendment claim), stating:

> [N]owhere in Count 2 or anywhere else in the complaint, does Holland assert any factual basis for this claim. Holland's affidavit does not set forth a factual statement of any denial of free speech. There being no factual basis for this claim, summary judgment is granted to the defendants as to Count 2.

J.A. at 129. Holland contends that his complaint properly stated a claim for violation of the First Amendment.[9]

■ The Supreme Court has established definitively that "a state or a division of a state may not discharge an employee on a basis that infringes that employee's constitu-tionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). However, plaintiffs asserting retaliatory discharge claims under 42 U.S.C. § 1983 must meet a three-pronged test. *Huang v. Board of Governors*, 902 F.2d 1134, 1140 (4th Cir.1990). The employee must first show that he engaged in speech on a matter of public concern. *Id.; see Dwyer v. Smith*, 867 F.2d 184, 193 (4th Cir.1989) (employee must show his speech was constitutionally protected). Second, the claimant must demonstrate that the alleged retaliatory action deprived him of some valuable benefit. *Huang*, 902 F.2d at 1140. Finally, the discharged employee must show a causal relationship between the protected speech and the retaliatory action, such that " 'but for' the protected expression the employer would not have taken the alleged retaliatory action." *Id.* Although Holland has alleged that his conduct in disciplining friends of the Board was the cause of the adverse employment action, his complaint fails on the first prong of the test.[10]

■ In assessing whether particular speech is protected by the First Amendment, the court considers "(1) whether a public employee's speech qualifies as a matter of public concern, and (2) what effect the speech has on the efficiency, discipline and proper administration of the workplace." *Dwyer*, 867 F.2d at 193. However, if the speech cannot be characterized as "relating to any matter of political, social, or other concern to the community," the court's inquiry ends there. *Connick v. Myers*, 461 U.S. 138, 146,

---

9. Holland also contends on appeal that the district court should have used the standard for deciding a Rule 12(b)(6) motion to dismiss, not the standard for determining summary judgment under Rule 56. It matters not that the district court decided Holland's First Amendment claim on a motion for summary judgment rather than on a motion to dismiss. Under either standard, as a matter of law, Holland's First Amendment claim fails. As concluded herein, Holland has neither alleged, nor otherwise demonstrated, that his speech touched upon matters of public concern. No material fact is alleged or at issue on this point. *See infra* at 1254–55.

10. Appellees assert that Holland has not met the third prong of the test. They point to affidavits of Board members stating that they did not fire Holland because of disciplinary actions taken by him, but because of the four reasons listed in the September 24, 1990 letter. We do not address the third prong of the *Huang* test because, based on Holland's allegations, his claim fails to satisfy the first prong of the test. *See Berger v. Battaglia*, 779 F.2d 992, 998 (4th Cir.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986) (public employee speech not on a matter of public concern enjoys no protection against public employer disciplinary action).

103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) (noting that, when employee expression is not of public concern, "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment").[11]

■ The final determination whether the speech relates to a matter of public concern is a question of law for the court, *Huang,* 902 F.2d at 1140, and should be made by examining the "content, form and context of a given statement, as revealed by the record as a whole." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. Because the inquiry is fact specific, it requires a case-by-case analysis. In the case *sub judice,* it is important to keep in mind that the speech for which the Board allegedly fired Holland involved internal discipline meted out by Holland to his subordinates. We turn, therefore, to a consideration of the content, form, and context of Holland's expressions in order to determine whether they involved matters of public concern.

As this court noted in *Jurgensen v. Fairfax County,* if the employee's expression deals primarily with matters of

"limited public interest" and does not "seek to bring to light actual or potential wrongdoing or breach of public trust," centering instead on matters primarily, if not exclusively "of personal interest" to the employer such as employee grievances over internal working conditions, etc., that fact must be weighed in determining whether a matter of true public concern is involved for the "First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."

745 F.2d 868, 879 (4th Cir.1984) (quoting *Connick,* 461 U.S. at 148–49, 103 S.Ct. at 1691). In other words, the inquiry is designed to avoid turning every public employee expression of dissatisfaction into a consti-

tutional case. *Berger v. Battaglia,* 779 F.2d 992, 999 (4th Cir.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986); *see Connick,* 461 U.S. at 149, 103 S.Ct. at 1691 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism—directed at a public official would plant the seed of a constitutional case."). In *Berger,* this court further narrowed the inquiry into content, stating that "[t]he focus is ... upon whether the 'public' or the 'community' is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a 'private' matter between employer and employee." *Berger,* 779 F.2d at 999.

■ Viewed under these criteria, the statements made and the resulting discipline meted out by Holland to his subordinates concerned their performance as employees and clearly involved only matters of internal personnel management and not matters of public concern. Nowhere does Holland allege that the disciplinary statements he made to the other employees were in any way political or involved any matter of concern to the public. *See, e.g., Barnes v. Small,* 840 F.2d 972, 982–83 (D.C.Cir.1988) (holding that employee's statements addressing misbehavior of other employees in his office did not involve matter of public concern). On the contrary, Holland's complaint alleges only that he disciplined his subordinates in the course of carrying out his legitimate job duties. Such internal personnel matters are not likely to arouse the public's interest and do not become matters of public concern merely because they occur in a public agency. *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691.

Furthermore, the form and context of Holland's speech support a finding that it did not implicate matters of public concern. Holland's statements were made as a supervisory employee to other employees, not as a

---

11. Only if the expressions relate to a matter of public concern does the court move on to the second inquiry and apply the balancing test set forth in *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968): whether the employee's interest in com- menting upon matters of public concern outweighs the employer's "interest in effective and efficient fulfillment of its responsibilities to the public." *Connick,* 461 U.S. at 150, 103 S.Ct. at 1692.

citizen speaking out to the public about matters of public concern. *Id.* at 147, 103 S.Ct. at 1690; *see Kurtz v. Vickrey,* 855 F.2d 723, 727 (11th Cir.1988) (employee's effort to communicate his or her concerns to the public is relevant to determination whether speech relates to matter of public concern). Both the content, internal employee discipline, and the context, in-house communications between employees *speaking as employees,* of Holland's expression convince this court that Holland's speech was not on a matter of public concern. Absent even an allegation that he engaged in protected speech, Holland cannot meet the first prong of the test set forth in *Huang.* 902 F.2d at 1140.[12] Therefore, the district court correctly granted summary judgment for appellees on Holland's First Amendment claim.[13]

### III.

We turn next to the district court's ruling that the Board's termination of Holland afforded him sufficient due process. For the purposes of deciding whether there was a due process violation, the district court assumed that Holland had a property interest in his job. We will likewise assume, for the purposes of this appeal, that a Director of Social Services has a protected property interest in his job, and that he is, therefore, entitled to procedural due process before being deprived of such interest.[14]

### A.

All parties agree that appellees failed to follow the Virginia personnel procedures, and failed to provide Holland with due process, when they terminated him on August 28, 1990. Appellees contend however that, from August 28, 1990, when Holland was fired the first time, until September 24, 1990, the date on which he was finally terminated, Holland suffered *no deprivation of a property right.* Holland was reinstated and received full wages and benefits for this period of time.

Section 1983 provides that every person who, under color of law, subjects any citizen of the United States to the *deprivation* of any right secured by the Constitution shall be liable. Thus, in order to state a claim under 18 U.S.C. § 1983, Holland must have suffered some deprivation of property. *Royster v. Board of Trustees of Anderson County Sch.,* 774 F.2d 618, 621 (4th Cir.1985). In a factually similar case, the Sixth Circuit held that an employee who was reinstated with full back pay and benefits was not deprived of any property interest from the date of her earlier demotion until the date of her termination. *Sewell v. Jefferson County Fiscal Court,* 863 F.2d 461, 467 (6th Cir.1988); *see Gearhart v. Thorne,* 768 F.2d 1072, 1073 (9th Cir.1985) (holding that employee who was reinstated with back pay suffered no due process violation).

■ In *Royster,* this court held, in the context of a written employment contract, that "any constitutionally protected property interest [an employee] had as a result of his employment contract [was] satisfied by payment of the full compensation due under the

---

12. Therefore, this court need not address the second and third prongs of the test. *See supra* at 1254 and note 10.

13. *See supra* note 9.

14. Appellees do not contest the district court's ruling insofar as it applies to the due process determination. However, for purposes of deciding whether appellees are entitled to qualified immunity, the parties dispute whether the Director of Social Services is a permanent employee, such that he has a property interest in his job. Appellees claim that a Virginia circuit court decision, holding that a director of a social services department is not entitled to participate in the grievance procedures set out in Virginia Code section 2.1–114, et seq., rendered it unclear

whether a Virginia Director of Social Services has a property interest in his job. *See McGreal v. Lancaster Social Servs. Bd.,* 17 Va.Cir. 289 (1989). Although we find it unnecessary to address the issue of qualified immunity, *see supra* note 2, we note that the Director of Social Services clearly is covered by the merit system plan, as defined in section 63.1–87 of the Virginia Code. Va.Code Ann. § 63.1–61 (Michie 1991). The merit system plan provides that an employee shall receive notice and an opportunity to be heard either 1) before being terminated, or 2) promptly after termination, if the Board determines it is in the best interests of the agency to terminate the employee immediately. Va. Dept. of Social Servs. Personnel Manual, Vol. IA, Ch. C & D.

contract." 774 F.2d at 621.[15] We likewise find it reasonable to conclude that, because Holland received all the pay and benefits to which he was entitled, he suffered no deprivation of property for the period from August 28 to September 24, 1990.[16] Therefore, we turn next to an examination of the second termination.[17]

### B.

Holland asserts that the Board terminated him on September 24, 1990, without providing him with procedural due process because it failed to follow the procedures set out in Volume 1A of the Virginia Department of Social Services Personnel Manual and mandated by the Supreme Court in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Specifically, Holland claims that the Board failed to 1) give him written notice on form 129–01–004 and an opportunity to respond prior to terminating him; 2) document or support his dismissal with past performance evaluations; and 3) follow other provisions of the merit system plan, namely, the provision providing for fifteen days notice prior to termination. However, the record reveals clearly that the Board provided Holland with an opportunity to respond prior to discharging him on Sep-

tember 24, 1990. Moreover, in firing Holland for the second time, the Board complied with the procedures set out in the personnel manual.

First, Holland clearly received written notice of the reasons for his termination in both the Board's September 14, 1990 letter and its September 24, 1990 letter. Moreover, in its September 14 letter, the Board offered Holland an opportunity to respond prior to his discharge on September 24. Holland's complaint that he did not receive notice on Form 129–01–004, as specified in the personnel manual, can hardly support a finding that he was deprived of procedural due process.[18] Due process clearly requires notice of the charges against an individual, but not on any particular form. *Loudermill*, 470 U.S. at 545, 105 S.Ct. at 1495; *see Buschi v. Kirven*, 775 F.2d 1240, 1256 (4th Cir.1985) (phone call sufficient).

Second, Holland did in fact receive an unfavorable employee evaluation on September 14, 1990. The Board also provided Holland, on September 24, 1990, with four reasons for his discharge, all based on violations of the standards of conduct listed in the personnel manual. *See* Va. Dept. of Social Servs. Personnel Manual, Volume IA, Ch. C, at 81.[19]

---

15. It is not clear from the record whether Holland had any written employment contract setting forth pay, benefits, and so forth. However, it does appear, in terms of the duration of his employment, that Holland, as a local Director of Social Services, was an employee at will. *See supra* note 14; J.A. at 131 (district court's opinion, citing an opinion of the Attorney General of Virginia that the local director is an at will employee). Virginia follows the common law rule that, when the intended duration of an employment contract cannot be ascertained from its terms, either party may terminate the employment at will upon giving the other party adequate notice. *Miller v. SEVAMP, Inc.*, 234 Va. 462, 362 S.E.2d 915, 916–17 (1987) (private employment case). For purposes of the legal principle involved, whether Holland had any written employment contract or was an employee at will is irrelevant.

16. Had the Board's actions concerning Holland ceased at that point in time, clearly he would not have suffered a deprivation of a property right. Any claim Holland now asserts arises out of the Board's termination of his employment on September 24, 1990.

17. See *supra* note 16.

18. Holland contends that the grievance panel found that the Board, in terminating him, failed to follow the procedures set out in the personnel manual. However, the panel's finding refers only to the August 28, 1990 termination and not to the September 24, 1990 firing. *See* J.A. at 47. As noted above, no dispute exists as to whether the policies were followed before the first dismissal. *See supra* at 1256. Moreover, the panel did not award Holland any back pay or benefits for this violation, apparently because he had received both when the Board reinstated him on September 24, 1990. The only corrective action ordered by the panel was Holland's reinstatement as of July 15, 1991, without back pay or benefits, due to "the mitigating circumstances" of the Board's later ratification of the actions for which it subsequently and legitimately terminated him. *See supra* at 1253 and notes 6 & 7.

19. *See supra* notes 3, 5 & 6. Notice is not rendered invalid merely because the employee had a limited amount of time to respond. *Linton v. Frederick County Bd. of Comm'rs*, 964 F.2d 1436, 1440 (4th Cir.1992) (reviewing the adequacy of Maryland's administrative grievance procedures, which are similar to those utilized by Virginia). Nor does the inclusion of generalized

Clearly, Holland's dismissal was supported by a past performance evaluation and application of the standards of conduct, as required by the Virginia Department of Social Services personnel manual.

Finally, the personnel manual permits the Board to terminate an employee *immediately* if it believes that "the employee's continued presence may be a substantial threat to the welfare of the agency or fellow employees." *See id.*, Ch. D, at 52. The Board stated specifically in the September 24, 1990 letter it sent to Holland that it was proceeding under this provision, *not* the provision requiring fifteen days notice. When an employee is terminated effective immediately, the personnel manual requires that the employee be

> informed of the reasons for such suspension or removal as soon as possible thereafter and shall then be given a reasonable opportunity to respond. A written notice confirming the cause and nature of the suspension or removal actions shall be provided to the employee either before or promptly following such actions.

*Id.* It is undisputed that the Board provided Holland with a written notice confirming the reasons for his dismissal. Moreover, in the letter, the Board gave Holland a reasonable time to respond. He chose, instead, to file a grievance pursuant to the provisions of the merit system plan. Accordingly, it is clear that the Board followed the provisions of the merit system plan.

In *Detweiler v. Commonwealth Dept. of Rehabilitative Servs.*, 705 F.2d 557 (4th Cir. 1983), this court, relying on the Supreme Court's opinion in *Arnett v. Kennedy*, 416 U.S. 134, 170, 94 S.Ct. 1633, 1652, 40 L.Ed.2d 15 (1974), held that Virginia's grievance procedures, although they did not provide for a formal pretermination hearing, satisfied due process. 705 F.2d at 560. We stated there:

> Detweiler's claim that he was entitled to a pretermination hearing has been foreclosed by *Arnett*. There a majority of the Court ... held that a postdischarge hearing suffices. Here, as in *Arnett*, the hear-

ing panel is authorized to order reinstatement with back pay and benefits if it feels that the discharge was unjustified. Accordingly, the Virginia grievance procedure afforded Detweiler due process by assuring him a postdischarge hearing with an adequate remedy.

*Id.* (citation omitted); *see Layne v. Campbell County Dep't. of Social Servs.*, 939 F.2d 217 (4th Cir.1991) (employee provided notice and immediately discharged under the same section involved *sub judice* ).

■■■ Subsequently, in *Loudermill*, the Supreme Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and *an opportunity to present his side of the story.*" 470 U.S. at 546, 105 S.Ct. at 1495 (emphasis added). Thus, *Loudermill* modified this court's holding in *Detweiler* by requiring an opportunity for some kind of a hearing prior to discharge. *See Linton v. Frederick County Bd. of Comm'rs*, 964 F.2d 1436, 1439 (4th Cir.1992); *Buschi*, 775 F.2d at 1255. As this court noted in *Linton*, "[w]hen posttermination administrative procedures are afforded, such pretermination procedure functions only as 'an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" 964 F.2d at 1439 (quoting *Loudermill*, 470 U.S. at 545– 46, 105 S.Ct. at 1495). Such a hearing "need not be elaborate" and "need not definitively resolve the propriety of the discharge." *Buschi*, 775 F.2d at 1255 (phone call offering an interview sufficient even though not accepted by employees). Therefore, a pretermination opportunity to respond, coupled with posttermination administrative procedures provides "all the process that is due." *Loudermill*, 470 U.S. at 547–48, 105 S.Ct. at 1496. To require more "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546, 105 S.Ct. at 1495.

---

allegations render the notice defective, as long as it adequately details the charges on which termi-

nation was based. *Id.* at 1441.

As discussed above, the Board provided Holland with the reasons for its decision to terminate him and, prior to his second discharge, gave him an opportunity to respond. The fact that Holland did not receive a formal evidentiary hearing prior to the September 24, 1990 discharge does not create a due process violation. The Board complied fully with the Supreme Court's mandate in *Loudermill*, giving Holland notice and an opportunity to present his side of the story before he was terminated on September 24, 1990. *See, e.g., Linton*, 964 F.2d at 1439–40.

Moreover, the Board's September 24, 1990 termination of Holland complied with the provisions of the Virginia Department of Social Services personnel manual and the Virginia grievance procedures. Those procedures supply notice together with a posttermination administrative hearing. Those procedures, coupled with a pretermination opportunity to respond, provide the employee with procedural due process. *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495; *Detweiler*, 705 F.2d at 560. Because the Board, in dismissing Holland on September 24, 1990, provided him with a pretermination opportunity to respond and complied with the Virginia grievance procedures, giving him notice and a posttermination hearing, Holland received all the process which he was constitutionally due.[20] As a result of the application of Virginia's procedures, Holland actually prevailed and was reinstated to his position.

## IV.

Based on the foregoing discussion, we conclude that the district court did not err in granting appellees' motion for summary judgment. Accordingly, the decision below is AFFIRMED. However, the case is REMANDED to the district court for a determination of whether to exercise pendent jurisdiction over appellant's state law claims.

*AFFIRMED AND REMANDED IN PART*

---

**20.** In the district court, and on appeal, Holland contested the applicability of the Supreme Court's decisions in *Parratt*, 451 U.S. 527, 101 S.Ct. 1908, and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which held that a postdeprivation hearing satisfies due process when the complained of deprivation is random and unauthorized. Citing *Plumer v. Maryland*, 915 F.2d 927 (4th Cir.1990), Holland claimed that the Board's acts were not random and unauthorized and that, therefore, the post-termination panel hearing was not sufficient. Appellees, on the other hand, argued that the Board's acts were random and unauthorized and that, under *Parratt* and *Hudson*, Holland's posttermination remedy satisfied due process. Because we find that the Board gave Holland a pretermination opportunity to respond and complied with the Virginia grievance procedures, which together afford discharged employees due process, *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495; *Detweiler*, 705 F.2d at 560, we do not address the *Parratt/Hudson* issue.