**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

REX KEPHART,
<u>Plaintiff-Appellant,</u>

v.

CHEROKEE COUNTY, NORTH
CAROLINA; RICK HONEYCUTT, in his
individual and official capacities as
County Manager; CHARLES LANEY,
in his individual and official

capacities as former County
Commissioner; EUGENE MORROW, in
his individual and official capacities
as County Commissioner; GEORGE
POSTELL, in his individual and
official capacities as County
Commissioner,
<u>Defendants-Appellees.</u>

No. 99-1789

Appeal from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CA-98-94-2-T)

Argued: June 8, 2000

Decided: August 4, 2000

Before WILKINS and LUTTIG, Circuit Judges,
and Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed in part and reversed in part by unpublished opinion. Judge Wilkins wrote the opinion, in which Judge Luttig and Senior Judge Beezer joined.

_____

**COUNSEL**

**ARGUED:** Matthew C. Billips, ZIMRING, SMITH & BILLIPS, P.C., Atlanta, Georgia, for Appellant. James Bernard Spears, Jr., HAYNSWORTH, BALDWIN, JOHNSON & GREAVES, L.L.C., Greenville, South Carolina, for Appellees. **ON BRIEF:** Thomas A. Bright, HAYNSWORTH, BALDWIN, JOHNSON & GREAVES, L.L.C., Greenville, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Rex Kephart appeals two orders of the district court granting summary judgment to Cherokee County, North Carolina and individual defendants on Kephart's claims asserting violations of the First and Fourteenth Amendments, the Family and Medical Leave Act (FMLA) of 1993, 29 U.S.C.A. §§ 2601-2654 (West 1999), and the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C.A.§§ 12101-12213 (West 1995 & Supp. 2000). We reverse the grant of summary judgment to Cherokee County on Kephart's FMLA claim, and otherwise affirm the orders of the district court in all respects.

I.

The facts, viewed in the light most favorable to Kephart, are as follows. Kephart was hired by the County as the Tax Collector in 1989. In 1994, he became the Tax Assessor as well. Thereafter, he served

2

as "Tax Administrator," performing the duties of both Tax Collector and Tax Assessor.

In 1995, the County contracted with COTT Systems, Inc. (COTT) to perform a revaluation study of real property values in the County. As part of this study, COTT had prepared a "tax card" for each piece of property, which contained the valuation for that property. It had completed the majority of the work necessary for the project by January of 1996.

In 1996, the Cherokee County Commission consisted of Charles Laney, George Postell, and Eugene Morrow. Both Kephart and members of the Commission had expressed concern about problems associated with the work COTT was doing. The Commissioners and Deborah Coarsey, who was the Tax Appraiser at the time, reviewed the tax cards that COTT had prepared and made notations on some of the cards suggesting to COTT that changes in the valuations were in order. Kephart alleges that the Commissioners and Coarsey made notations on the tax cards for property that belonged to them and to their relatives for the purpose of decreasing the valuations of those properties. The Commissioners and Coarsey were not themselves authorized to make changes in the valuations, but COTT, as a result of the notations, did review and then change the valuations of some of the properties.

Kephart complained to Rick Honeycutt, the County Manager, that by making notations on these cards, the Commissioners were possibly engaging in criminal activity and in any event their actions had the appearance of impropriety. After Kephart complained to Honeycutt, the Commissioners became aware of Kephart's complaints, and he was angrily confronted by Commissioner Postell. According to Julie Nix, another County employee, Commission Chairman Laney, while still angry about Kephart's complaint, "essentially told [Nix] that Rex Kephart was a problem and that he would not be a problem much longer." J.A. 293. Kephart claims that he experienced hostility from the Commissioners and that he was treated as a "pariah." Brief of Appellant at 38 (internal quotation marks omitted).

In July 1996, the County split Kephart's position into Tax Collector and Tax Assessor. Kenny Sawyer, who had previously served as

3

Business and Personal Property Appraiser, was appointed as Tax Collector, and Kephart retained the duties of Tax Assessor.[1] Kephart's pay and benefits did not change. Although the County asserts that it split Kephart's position in order to reduce his workload, Kephart asserts that he was given Sawyer's former duties in addition to the duties of Tax Assessor, as a result of which his workload did not decrease. Additionally, Kephart asserts that when Sawyer became Tax Collector, the County hired additional staff to assist Sawyer. When Kephart, while still serving as Tax Administrator, had requested permission to fill two vacancies in the Tax Assessor's office, Honeycutt "advised [Kephart] that if he would `get on the bandwagon,' then he would be allowed to fill these vacancies." J.A. 14. Finally, Kephart asserts that he was given the Tax Assessor position rather than the Tax Collector position because the Tax Collector can only be discharged for cause.

Kephart experienced a recurrence of his rheumatoid arthritis and, pursuant to his doctor's advice, took 30 days of sick leave beginning on July 30, 1996. Near the end of this leave period, Kephart requested further leave, which the County denied. After consulting his attorney, Kephart requested an additional 90 days of leave, specifically asserting his rights under the FMLA.[2] The County then granted the leave and sent Kephart a United States Department of Labor form. On that form, the County indicated that it had ascertained that, as Tax Assessor, Kephart was a "key employee," and that it had determined that restoring Kephart to employment at the conclusion of his leave would cause substantial and grievous economic harm. The County informed Kephart:

> It has been determined by the Administration that the position which you hold is of such nature as to require it be filled with a permanent replacement. The consequences of this to you is that an equivalent position may not be available at the time you return from your FMLA leave.

---

[1] The County offered Kephart the choice of which position he preferred to retain, but Kephart never responded.

[2] Kephart had accrued 400 hours of sick leave. Thus, the additional 90-day leave he requested consisted of 400 hours of sick leave with the remainder pursuant to the FMLA.

> If, at the time you return from leave, there are no equiva-
> lent positions available, your employment with Cherokee
> County will be terminated.

Id. at 239.

While Kephart was on leave, the County appointed Coarsey as
Interim Tax Assessor. When Kephart informed the County in Decem-
ber 1996 that he had been released by his doctor to return to work and
requested reinstatement to his former position, the County denied his
request, informing him that his position as Tax Assessor had been
filled during his absence and no equivalent position was available.
Therefore, Kephart's employment with the County was terminated.

Kephart filed this action in district court, asserting that the County
and various individuals[3] (collectively, "Appellees") had retaliated
against him on account of protected speech in violation of the First
and Fourteenth Amendments; had violated the FMLA by refusing to
reinstate him after his leave; and had violated the ADA by refusing
to accommodate his disability by affording him the full benefit of the
FMLA. The matter was referred to a magistrate judge, and Appellees
subsequently moved for summary judgment on all claims. The magis-
trate judge recommended that the motion be denied with respect to
the First Amendment claim; denied with respect to the FMLA claim
as against the County and granted as against the individuals; and
granted with respect to the ADA claim as against all Appellees. In his
Memorandum and Recommendation, the magistrate judge clearly
informed the parties that it was necessary to timely file written objec-
tions to his recommendations in order to preserve issues for appeal.
Appellees filed objections with the district court; Kephart did not file
any objections.

In its first order, the district court adopted in part and rejected in
part the recommendations of the magistrate judge, granting Appel-
lees' motion for summary judgment as to all claims except the FMLA

_____

[3] Kephart named Rick Honeycutt, County Manager, Charles Laney,
former County Commissioner, Eugene Morrow, County Commissioner,
and George Postell, County Commissioner, each in his individual and
official capacities.

claim. On the FMLA claim, the court granted summary judgment for the individuals but reserved ruling on the FMLA claim against the County. In its second order, the district court granted summary judgment to the County on the FMLA claim.**4**  We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to Kephart. See Figgie Int'l, Inc. v. Destileria Serralles, Inc., 190 F.3d 252, 255 (4th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

II.

A.

Kephart first contends that the district court erred in granting summary judgment to Appellees on his First Amendment claim. We disagree. In order to prevail on a First Amendment retaliation claim, a plaintiff must satisfy a three-prong test:

> The employee must first show that he engaged in speech on a matter of public concern. Second, the claimant must demonstrate that the alleged retaliatory action deprived him of

_____

**4** In its first order, the district court requested further evidence from the parties regarding whether Kephart was a "key employee" under the FMLA. The County submitted an affidavit of Randy Wiggins, and Kephart filed an untimely response. In its second order, the court granted summary judgment on Kephart's FMLA claim, and Kephart then moved to strike the Wiggins affidavit and objected to the refusal of the court to consider his untimely response. The court ruled that Kephart's motion and objection were moot since the court had not relied on the Wiggins affidavit in granting summary judgment on the FMLA claim. Kephart appeals this order in addition to the two orders granting summary judgment to Appellees. However, because this order is neither final nor collateral, it is not appealable under 28 U.S.C.A.§ 1291 (West 1993) or Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-47 (1949). Nor may we exercise pendent appellate jurisdiction over the order. See United States v. North Carolina, 180 F.3d 574, 581 n.4 (4th Cir. 1999).

6

some valuable benefit. Finally, the . . . employee must show a causal relationship between the protected speech and the retaliatory action, such that "but for" the protected expression the employer would not have taken the alleged retaliatory action.

Holland v. Rimmer, 25 F.3d 1251, 1254 (4th Cir. 1994) (citations & internal quotation marks omitted); Huang v. Board of Governors, 902 F.2d 1134, 1140 (4th Cir. 1990).

Kephart claims that in retaliation for his protected speech, Appellees denied his request to fill vacancies in the Tax Assessor's office and denied his request for reinstatement after his FMLA leave.[5] The burden of proof on the causation issue in First Amendment retaliation cases is allocated as follows: "The initial burden lies with the plaintiff, who must show that his protected expression was a `substantial' or `motivating' factor" in the employer's adverse decision. Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir. 1993). Only if the plaintiff satisfies this burden does the burden shift to the employer to show that the protected speech was not the "but for" cause of the adverse action. See id. We conclude that Kephart has failed to meet his initial burden of showing that his allegedly protected speech was a substantial or motivating factor in the allegedly retaliatory actions of Appellees.[6]

_____

[5] Kephart additionally alleges that Appellees ostracized him and treated him in a hostile manner; "stripp[ed]" him of the Tax Collector duties, Brief of Appellant at 37; and initially denied the FMLA leave. These actions, however, did not "deprive[ ][Kephart] of some valuable benefit." Holland, 25 F.3d at 1254. Kephart continued to receive the same salary and benefits after his change in position; moreover, Appellees offered Kephart his choice of the Tax Collector or Tax Assessor positions, and when Kephart failed to make a choice, the County assigned him the Tax Assessor position. Kephart was not deprived of a valuable benefit by the initial denial of his FMLA leave, given that the County eventually granted the leave.

[6] Because we conclude that Kephart has not proffered sufficient evidence to survive summary judgment on the causation prong, we need not address the issue of whether Kephart engaged in speech on a matter of public concern.

In support of his claim that Appellees retaliated against him because of his speech, Kephart offers Honeycutt's statement that Kephart would be permitted to fill the vacancies in his office if he would "get on the bandwagon," J.A. 14 (internal quotation marks omitted), and Nix's statement that "Commission Chairman Charles Laney essentially told me that Rex Kephart was a problem and that he would not be a problem much longer," id. at 293.[7]

Kephart indicated in his deposition that Honeycutt's "bandwagon" statement was made during a conversation in which Kephart disagreed with Honeycutt regarding the configuration of the office. In fact, Kephart's deposition testimony suggests that Honeycutt and Kephart had several disagreements regarding how the office was run; Kephart does not claim that criticisms he made with regard to these disagreements constituted protected speech. The inference that Honeycutt's statement referred to Kephart's criticisms related to the tax cards is too speculative to satisfy Kephart's burden.

We conclude that the passage of time between Laney's statement and Kephart's termination renders that statement insufficient to satisfy Kephart's burden. The statement was made in early 1996, while Laney was "still extremely angry over Mr. Kephart's questioning of his actions," id., yet Kephart was not actually terminated until December 1996. Under these circumstances, we conclude that Laney's statement does not create a genuine issue of fact regarding whether Kephart's allegedly protected speech was a substantial or motivating factor in the decision to terminate him.[8] Accordingly, we affirm the

_____

[7] Kephart also offers the statements of other employees stating that he was subject to hostile treatment by the Commissioners and that "[i]t was common knowledge among the office staff that the County management wanted to pressure Mr. Kephart out of the office." J.A. 297. We find these statements less probative of the issue than those of Honeycutt and Nix.

[8] Kephart argues that the evidence that his speech was a substantial or motivating factor in the County's refusal to reinstate him after his leave is more probative than that in Waters v. Churchill, 511 U.S. 661 (1994), in which the Court held that the employee should have survived summary judgment. See Waters, 511 U.S. at 681 (plurality opinion). We disagree. It is true that the Court in Waters relied on circumstantial evidence

grant of summary judgment in favor of Appellees on the First Amendment claim.

B.

Next, Kephart maintains that the district court erred in granting summary judgment to Appellees on his FMLA claim. We agree that the district court erred in granting summary judgment for the County on this claim. As to the individual defendants, we do not consider the issue because by failing to object to the recommendation of the magistrate judge that summary judgment be granted to the individual defendants, Kephart waived the right to appeal that ruling. See 28 U.S.C.A. § 636(b)(1) (West 1993); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997) ("If written objections to a magistrate judge's recommendations are not filed with the district court within ten days, a party waives its right to an appeal."). But see Henderson v. Carlson, 812 F.2d 874, 877-79 (3d Cir. 1987) (noting circuit split and refusing to adopt waiver rule).

The FMLA provides that an eligible employee is entitled to medical leave for certain enumerated reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D). One of the rights guaranteed to the eligible employee is the right to be "re-

_____

of a similar nature to that offered by Kephart: The employee had been critical of a policy implemented by her supervisors, "management had exhibited some sensitivity about the criticisms," and the employee identified conduct on the part of management showing it was hostile to her because of this criticism, id. at 681-82 (plurality opinion). In Waters, however, the employee had expressed her criticism over a period of months, and the event that precipitated her termination was a conversation with another employee that involved allegedly protected speech and that took place a mere 11 days before her termination. See Churchill v. Waters, 977 F.2d 1114, 1116-19 (7th Cir. 1992), vacated, 511 U.S. 661 (1994). Given the time that elapsed between Kephart's allegedly protected speech and his termination, we find Kephart's circumstantial evidence too tenuous to support the inference that his criticisms of the Commissioners' conduct were a substantial or motivating factor in the refusal by the County to reinstate him.

stored" to his position, or an equivalent position with the same terms and benefits, at the termination of his leave. Id. § 2614(a)(1). An exemption is provided to the employer, however, in the case of certain highly paid employees, known as "key employees":

> (1) <u>Denial of restoration</u>
>
> An employer may deny restoration . . . to any eligible employee described in paragraph (2) if--
>
> (A) such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer;
>
> (B) the employer notifies the employee of the intent of the employer to deny restoration on such basis at the time the employer determines that such injury would occur; and
>
> (C) in any case in which the leave has commenced, the employee elects not to return to employment after receiving such notice.
>
> (2) <u>Affected employees</u>
>
> An eligible employee described in paragraph (1) is a salaried eligible employee who is among the highest paid 10 percent of the employees employed by the employer within 75 miles of the facility at which the employee is employed.

Id. § 2614(b).

Regulations promulgated by the Department of Labor address the "substantial and grievous economic injury" standard. Restoration may be denied only when restoration itself--not the employee's absence--will cause substantial and grievous economic injury. See 29 C.F.R. § 825.218(a) (1999). "If permanent replacement is unavoidable, the cost of then reinstating the employee can be considered in evaluating whether substantial and grievous economic injury will occur from res-

10

toration." Id. § 825.218(b). Although there is no precise test for substantial and grievous economic injury, see id. § 825.218(c), the standard is "different from and more stringent than the `undue hardship' test under the ADA," id. § 825.218(d). Finally, if restoration "threatens the economic viability of the firm" or "causes substantial, long-term economic injury," then the standard would be met, but "[m]inor inconveniences and costs that the employer would experience in the normal course of doing business would certainly not" meet the standard. Id. § 825.218(c).

Regarding the notice requirement, the regulations explain that an employer who believes that reinstatement may be denied to an employee "must give written notice to the employee . . . that he or she qualifies as a key employee" and "[a]t the same time, the employer must also fully inform the employee of the potential consequences with respect to reinstatement and maintenance of health benefits if the employer should determine that substantial and grievous economic injury to the employer's operations will result" from reinstatement. Id. § 825.219(a). Additionally, "an employer who fails to provide such timely notice will lose its right to deny restoration even if substantial and grievous economic injury will result from reinstatement." Id. Finally, the notice to the employee "must explain the basis for the employer's finding that substantial and grievous economic injury will result." Id. § 825.219(b).

There is no dispute here that Kephart was entitled to medical leave. The parties dispute, however, whether the County was justified in refusing to restore Kephart to his position as Tax Assessor or a comparable position when Kephart's FMLA leave ended. Kephart argues that the County was not entitled to summary judgment on this issue because it failed to establish that his restoration would result in substantial and grievous economic injury.**9**

_____

**9** Kephart also argues that the County was not entitled to summary judgment because it failed to provide any evidence that he was a "key employee" covered by the exemption and it did not provide him with the required notice. Because we conclude that the County did not provide sufficient evidence that Kephart's restoration would result in substantial and grievous economic injury, we do not address Kephart's other contentions.

11

The magistrate judge determined that the exemption to the restoration requirement on which the County relies is an affirmative defense and that the County therefore has the burden of production and persuasion to show that the requirements of § 2614(b) were satisfied. Cf. Cross v. Southwest Recreational Indus., Inc., 17 F. Supp. 2d 1362, 1369-70 (N.D. Ga. 1998) (determining that the limitation in § 2614(a)(3) on employees' rights to restoration created an affirmative defense for the employer). We agree. A defendant relying on an affirmative defense may prevail on its summary judgment motion "when it has produced credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 614 (4th Cir. 1999) (internal quotation marks omitted). After the defendant has produced such evidence, the burden shifts to the plaintiff to come forward with evidence showing there is a genuine issue of material fact. See id.

Even assuming the County met its initial burden, there remains a genuine issue of material fact. The County argues that it needed a Tax Assessor and was therefore forced to replace Kephart;[10] it then could not restore Kephart to his position because that position was already filled; and no equivalent position existed so reinstating Kephart to an equivalent position would therefore have resulted in the expenditure of unbudgeted funds. However, Honeycutt's deposition testimony supports the conclusion that in December 1996, when Kephart requested reinstatement,[11] the Board of Commissioners could have

_____

[10] Although the County argues that having no Tax Assessor would have caused it substantial and grievous economic injury, this is not the correct inquiry. See 29 C.F.R. § 825.218(a).

[11] We note that the relevant time at which the economic injury to the County must be assessed is clarified by the regulations. After an employer has notified a key employee that substantial and grievous economic injury would result from the employee's reinstatement, "an employee is still entitled to request reinstatement at the end of the leave period." 29 C.F.R. § 825.219(d). At that point, "[t]he employer must then again determine whether there will be substantial and grievous economic injury from reinstatement, based on the facts at that time." Id. (emphasis added). Thus, the County must show, based on the facts in December 1996 when Kephart requested reinstatement, that substantial and grievous economic injury would have resulted from Kephart's reinstatement.

12

returned Coarsey--who had only an <u>interim</u> appointment as Tax Assessor--to her position as Tax Appraiser and reinstated Kephart to the position of Tax Assessor with no economic injury resulting. We do not express an opinion on the merits of this claim. Rather, we conclude only that there is a triable issue of fact here, and summary judgment for the County was therefore inappropriate.

C.

Finally, Kephart asserts that the district court erred in granting summary judgment in favor of Appellees on his ADA claim. Because Kephart failed to object to the recommendation of the magistrate judge to dismiss this claim, he has waived the right to appeal this ruling. <u>See</u> 28 U.S.C.A. § 636(b)(1); <u>Wells</u>, 109 F.3d at 201. Accordingly, we affirm the order of the district court granting summary judgment on this claim.

III.

For the reasons set forth above, we conclude that the district court correctly granted summary judgment to all Appellees on Kephart's First Amendment and ADA claims and to the individuals on Kephart's FMLA claim. We conclude that the district court erred in granting summary judgment to the County on Kephart's FMLA claim. Accordingly, we affirm in part and reverse in part.

<u>AFFIRMED IN PART AND REVERSED IN PART</u>

13