**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-1463**

CHARLES E. BEVIS,

Plaintiff - Appellee,

versus

WILLIE BETHUNE; LEROY FRED; MARK BINKLEY;
JAMES H. SCULLY, JR., Doctor, in their
individual capacities,

Defendants - Appellants,

and

SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH,

Defendant.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.   Matthew J. Perry, Jr., Senior
District Judge.   (3:03-cv-00135-MJP)

Submitted:  March 27, 2007          Decided:  May 2, 2007

Before NIEMEYER and WILLIAMS, Circuit Judges, and T. S. ELLIS, III,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

Reversed by unpublished per curiam opinion.

Kathryn Thomas, GIGNILLIAT, SAVITZ & BETTIS, L.L.P., Columbia, South Carolina, for Appellants.  J. Lewis Cromer, CROMER & MABRY, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Willie Bethune, Mark Binkley, and James Scully appeal the district court's denial of their motion for summary judgment on the ground of qualified immunity with respect to Charles Bevis's claim under 42 U.S.C.A. § 1983 (West 2003 & Supp. 2006). They argue that Bevis cannot establish a violation of a constitutional right because he has not shown that he engaged in constitutionally protected speech, nor has he demonstrated that he suffered any resulting harm. Because Bevis has failed, as a threshold matter, to show that he engaged in constitutionally protected speech, we reverse the district court's denial of Appellants' claim of qualified immunity.

I.

Bevis became the administrative director of the Pee Dee Mental Health Center (the "Center"), a branch of the South Carolina Department of Mental Health (the "Department"), in July 1984. He was promoted to executive director of the Center in 1985 and served in that position for nearly seventeen years. (J.A. at 279.) After an investigation revealed serious procurement violations at the Center, Bevis announced his voluntary retirement, effective November 2001.

On January 13, 2003, Bevis filed a complaint in the United States District Court for the District of South Carolina alleging

3

that his retirement was in effect a constructive discharge. He claimed, inter alia, that Appellants retaliated against him for exercising his First Amendment rights, in violation of 42 U.S.C.A. § 1983. Bevis based his § 1983 claim on his "support" of complaints made by an employee, Susan Nickles, during a six-month period in which he served as her supervisor.

Specifically, Bevis alleged that he supported Nickles after she sent a letter to the South Carolina Mental Health Commission (the "Commission") raising concerns about the Department's treatment of patients, staff, and Nickles herself. In response, the Commission arranged a small meeting on June 13, 2000. Although Bevis had not been invited to attend, he requested to be present because he was Nickles's supervisor and wanted to support her. Mark Binkley, the Department's General Counsel, attended the meeting. James Scully, who served as Interim Director of the Department for much of 2000, and Willie Bethune, who became Bevis's supervisor in August of 2001, however, did not attend the meeting.

Bevis claimed to have expressed additional support for Nickles during a meeting with Binkley and Scully to discuss proposed disciplinary action against Nickles for improper communications she had made, specifically comments criticizing the incoming Director of the Department, George Gintoli. Scully and Binkley wanted to take more serious action against Nickles than the written warnings she had already received for other remarks. Bevis opined that "one

4

should err on the side of caution on those kinds of things rather than take serious steps that you can't step back from easily." (J.A. at 384.)[1] As a result, Nickles simply received a "Memo of Clarification" of a previous Written Warning that detailed a permissible manner of making complaints and explained that certain other means of expressing her dissatisfaction were improper and disruptive. On November 17, 2000, however, Scully initiated further disciplinary action against Nickles in the form of a "Notice of Recommendation for [a Five-Day] Suspension." Bevis spoke on Nickles's behalf at a grievance hearing related to the Notice.

In addition to the § 1983 claim, Bevis's complaint alleged "race and religious discrimination and retaliation" in violation of Title VII against the Department and Leroy Fred, a member of the Center's Board; Bevis raised civil conspiracy as "an alternative third cause of action against the individual defendants." (J.A. at 13.) The Department, Fred, and Appellants (collectively "the defendants") asserted a number of defenses, including a claim of qualified immunity on behalf of Appellants, and moved for summary judgment on all claims.

---

[1]Citations to the "J.A." refer to the joint appendix filed with this appeal.

A magistrate judge recommended that the defendants' motion for summary judgment be granted.[2]  On March 24, 2006, the district court held a hearing at which Bevis withdrew his objection to the magistrate judge's recommendation of summary judgment on his Title VII claim.  The district court summarily denied the defendants' motion for summary judgment with regard to the remaining claims, stating that "there are material issues of fact that prevent this Court from disposing of this case by way of summary judgment." (J.A. at 699.)  Appellants requested that the district court reconsider the qualified immunity issue, but the district court denied their oral motion.

Appellants timely appealed the denial of their motion for summary judgment on the ground of qualified immunity.  We have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006).  See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) (holding that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' withing the meaning of 28 U.S.C. § 1291, notwithstanding the absence of a final judgment").

---

[2]Pursuant to D.S.C. R. 73.02(B)(2)(g), the Clerk of the Court refers to a magistrate judge "[a]ll pretrial proceedings involving litigation arising out of employment discrimination cases invoking federal statutes which proscribe unfair discrimination in employment . . . ."

II.

We review de novo the district court's denial of the individual defendants' motion for summary judgment based on qualified immunity. See Johnson v. Caudill, 475 F.3d 645, 650 (4th Cir. 2007). To determine whether Appellants are entitled to qualified immunity, we must make a two-step inquiry "in proper sequence." Saucier v. Katz, 533 U.S. 194, 200 (2001). First, we must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated a constitutional right. Id. at 201. If the facts, so viewed, do not establish a violation of a constitutional right, the plaintiff cannot prevail, and "there is no necessity for further inquiries concerning qualified immunity." Id. If, however, a favorable view of the facts does establish such a violation, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. Id. If the right was not clearly established, the defendants are entitled to qualified immunity. Id.

Accordingly, we turn first to the question of whether the facts, viewed in the light most favorable to Bevis, establish a violation of a constitutional right. "The Supreme Court's decision in Pickering v. Board. of Educ., 391 U.S. 563[] (1968), and cases following, established that a state government employer violates the Constitution if it deprives an employee of a valuable

7

employment benefit in retaliation for the employee's exercise of his constitutionally protected speech." DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir. 1995). Thus, to establish a violation of his First Amendment rights, an employee must meet a three-pronged test, showing that (1) his speech was constitutionally protected, (2) the alleged retaliatory action deprived him of some valuable benefit, and (3) the protected speech was the but-for cause of the retaliatory action. Holland v. Rimmer, 25 F.3d 1251, 1254 (4th Cir. 1994).

To determine whether a public employee's speech is constitutionally protected, we must determine, as a threshold matter, whether the expressions in question were made by the speaker "as a citizen upon matters of public concern." Garcetti v. Ceballos, 126 S. Ct. 1951, 1956 (2006) (internal quotation marks omitted) (holding that public employees speaking pursuant to their official duties are not speaking as citizens for First Amendment purposes). When a public employee speaks as a citizen upon a matter of public concern, we must apply the balancing test established by the Supreme Court in Pickering v. Bd. of Education, 391 U.S. 563 (1968), to determine whether the speech is constitutionally protected. If, however, the employee is not speaking as a citizen for First Amendment purposes or comments "upon matters only of personal interest," DiMeglio, 45 F.3d at 805 (internal quotation marks omitted), the Constitution does not

8

insulate his remarks from employer discipline, and our inquiry ends. "Because almost anything that occurs within a public agency could be of concern to the public," the focus of our inquiry is on "whether the speech at issue . . . was made primarily in the plaintiff's role as citizen or primarily in his role as employee." Id. (internal quotation marks omitted); see also Urofsky v. Gilmore, 216 F.3d 401, 407 (4th Cir. 2000) (en banc) (stating that "critical to a determination of whether employee speech is entitled to First Amendment protection is whether the speech is made primarily in the employee's role as citizen or primarily in his role as employee" (internal quotation marks and alteration omitted)).

Bevis identified three instances of speech or association that form the basis for his claim: (1) his comments at the June 2000 meeting, coupled with his nodding and generally showing agreement with Nickles; (2) his statements at the meeting in which he, Scully, Binkley, and Rosin discussed reprimanding Nickles; and (3) his statements at Nickles's grievance hearing. He also stressed his belief that there was a general awareness that he "supported Susie Nickles and stood by what she was trying to accomplish." (J.A. at 388.)

With regard to the three specific instances described above, Bevis has not established that he was speaking as a citizen on a matter of public concern. He made his comments at the meeting to

discuss the appropriate means of reprimanding Nickles and at Nickles's grievance hearing pursuant to his duties as Nickles's supervisor. Moreover, his remarks did not implicate matters of public concern, as they pertained only to internal employee discipline. See Ceballos, 126 S. Ct. at 1960 (emphasizing that the controlling factor in Ceballos's case was "that his expressions were made pursuant to his duties" as an employee); Holland, 25 F.3d at 1256 (explaining that "[b]oth the content, internal employee discipline, and the context, in-house communications between employees speaking as employees," of a public employee's speech showed that the speech was not on a matter of public concern (emphasis in original)).

Because Bevis was not invited to the June 2000 meeting, he can show that his expression on that occasion was not made pursuant to his official duties as Nickles's supervisor. That he was not required to engage in the particular expression at issue, however, is not dispositive, as Bevis's expression of support was nevertheless made in his capacity as an employee. Nickles explained that "Bevis was [her] supervisor and he requested to be present and so that was why he was there." (J.A. at 268.) Bevis used his role as Nickles's supervisor to access the meeting, and those in attendance understood his presence to be in his supervisory capacity. Although Bevis attempts to claim a "dual role" for himself, asserting that he "wanted to be present both as

10

her supervisor and as someone who wanted to hear all of the issues that she was going to present," (J.A. at 390-91), he effectively concedes that he attended the meeting as Nickles's supervisor and expressed his support for her in that capacity. Bevis explained that although his supervisory responsibilities did not require him to attend the meeting, he considered it appropriate that he do so, because he considered it "a major meeting," and Nickles had asked him to be present. (J.A. at 390.)

Bevis's vague claim of a violation of his right to freedom of association based on his general "support" of Nickles must fail as well. The First Amendment protects a person's right to associate with another person for the purpose of engaging in protected speech and assembly, exercising one's religion, and petitioning for the redress of grievances, Kidwell v. Transp. Comm. Int'l. Union, 946 F.2d 283, 301 (4th Cir. 1991), and "[l]ogically, the limitations on a public employee's right to associate are closely analogous to the limitations on his right to speak," Edwards v. City of Goldsboro, 178 F.3d 231, 249 (4th Cir. 1999) (internal quotation marks omitted). To establish a First Amendment violation based on his relationship with Nickles, Bevis cannot allege generally that he supported all that Nickles did and said; he must associate himself with protected expression made by Nickles. Bevis, however, has offered no means of connecting the alleged retaliation to protected speech. He has only noted that (1) Binkley, like himself, nodded

11

and expressed agreement with certain points made by Nickles at the June 2000 meeting, and (2) Scully felt that some of Nickles's communications evidenced a need for closer supervision and more severe disciplinary action than Bevis believed were required (although he too agreed that the manner in which Nickles made her complaints was improper). Accordingly, Bevis cannot establish a violation of a constitutional right.

## III.

In sum, we conclude that, because Bevis has not shown that he engaged in or was associated with expression that was made as a citizen on a matter of public concern, he has not shown that he engaged in constitutionally protected speech. Accordingly, he cannot establish a violation of a constitutional right, and Appellants are entitled to qualified immunity against his § 1983 claim. We therefore reverse the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.

REVERSED